IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

THE GOODYEAR TIRE & RUBBER    :
CO.,                          :
                              :
      Plaintiff,              :
                              :      CIVIL ACTION
v.                            :      NO. 2:04-CV-69-WCO
                              :
GREAT SOUTHWEST EXPRESS CO.,  :
INC.,                         :
                              :
      Defendant.              :

## **ORDER**

The captioned case is before the court for consideration of defendant's motion to strike [35-1] and plaintiff's motion for summary judgment [24-1].

### I.    **Background**

Plaintiff filed suit on April 5, 2004, alleging that five shipments of tires that plaintiff had tendered to defendant were stolen from defendant's terminal. Plaintiff claims that defendant failed to pay for these shipments and that defendant was liable to plaintiff for breach of the parties' carrier contract. Plaintiff sought damages of $299,226.75 plus prejudgment and post judgment interest.

On August 10, 2005, plaintiff filed a motion for summary judgment [24-1] on its claim for breach of contract under the Carmack Amendment to the Interstate Commerce Act, which is codified at 49 U.S.C. § 14706.  In a written order dated December 23, 2005 [31-1], the court found that plaintiff had established the first two elements of a Carmack Amendment prima facie case[1]-- that the tires were delivered to defendant in good condition and that they never arrived at their various destinations as they were stolen from defendant's control.  In support of the third element of the prima facie case, the amount of damages, plaintiff submitted the affidavit of Karen Klamert-Porter, the cargo claims manager for plaintiff's third-party claims administrator.  Plaintiff also submitted invoices and reference value certifications for the shipments.  The court, however, found that Klamert-Porter's affidavit did not lay the proper foundation for the admission of the other documents as business records.

In the December 23, 2005 order, the court set a hearing on damages and ordered the parties to submit any additional affidavits or supporting documents

---

[1] A plaintiff may establish a prima facie case under the Carmack Amendment through proof by a preponderance of the evidence that (1) the goods were delivered to the carrier in good condition; (2) the goods either did not arrive or arrived at the destination in a damaged condition; and (3) a specified amount of damages resulted.  Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir. 1990); see also, A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d 997, 1003 (11th Cir. 2003).

before the date of the hearing. In support of its motion for summary judgment, plaintiff filed the affidavit of Todd Fisher, the billing and accounts receivable manager. Through the Fisher affidavit, plaintiff seeks to cure the evidentiary problems noted by the court with regard to the Klamert-Porter affidavit. Defendant has filed a motion to strike [35-1] the Fisher affidavit. Defendant also objects to plaintiff's valuation of its damages. During a telephone conference with the parties on March 7, 2006, the court agreed to address by written order the new evidence submitted in support of plaintiff's motion for summary judgment and defendant's objections to this evidence.

## II. Analysis

The supplemental evidence submitted by plaintiff in support of its motion for summary judgment consists of the affidavit of Todd Fisher and an invoice inadvertently omitted from the Klamert-Porter affidavit. Defendant requests that the court strike the Fisher affidavit in its entirety. Therefore, the court will first address defendant's motion to strike.

### A. Motion to Strike

In its motion to strike, defendant sets forth two objections to the Fisher affidavit: (1) that the affidavit does not lay the proper foundation for the admission of the invoices and reference value certifications under the business

record exception to the hearsay rule; and (2) that the affidavit contains material information that plaintiff refused to provide during its Rule 30(b)(6) deposition. However, during the March 7, 2006 conference with the court, defendant stated that it would withdraw its hearsay objection.  The court will now address defendant's second objection.

On February 14, 2005, defendant took plaintiff's deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff produced Ms. Klamert-Porter as its witness to testify regarding topics including the value of the tires, the cost of production of the tires, and the claims submitted by plaintiff to defendant regarding the tires.  Defendant now claims that Ms. Klamert-Porter was "wholly incompetent" to testify regarding these topics.  Defendant asserts that plaintiff is engaging in "trial by ambush" in attempting to fill in the gaps of Ms. Klamert-Porter's testimony by submitting the affidavit of Mr. Fisher, who was not produced by plaintiff for the deposition.  Defendant requests that the court strike the Fisher affidavit as plaintiff has failed to meet its duty under Rule 30(b)(6).

Rule 30(b)(6) placed the burden on plaintiff to designate a corporate representative having knowledge of the matters noticed.  FED. R. CIV. P. 30(b)(6). "When a corporation . . . designates a person to testify on its behalf, the

corporation appears vicariously through that agent." Resolution Trust Corp. v. Southern Union Co., Inc., 985 F.2d 196, 197 (5th Cir. 1993). "If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." Id.

Defendant argues that plaintiff failed to designate a knowledgeable representative as Ms. Klamert-Porter could not testify regarding the preparation of plaintiff's business records. For this reason, defendant requests that the court strike Mr. Fisher's affidavit. The cases to which defendant cites in support of its argument involve situations in which the affidavit testimony submitted for the court's consideration contradicts the earlier deposition testimony of the corporate representative. See, e.g., Moore v. Summers, 113 F. Supp. 2d 5, 28 (D.D.C. 2000); Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 94-96 (D.D.C. 1998). In the case at hand, however, there is no evidence that Mr. Fisher's affidavit testimony contradicts Ms. Klamert-Porter's deposition testimony. In fact, Mr. Fisher confirms the valuations and the amounts testified to by Ms. Klamert-Porter. The two affidavits are not contradictory, nor do they alter any substantive testimony regarding plaintiff's damages. Furthermore, defendant

has failed to establish that Ms. Klamert-Porter was not knowledgeable about the deposition topics.[2]

Plaintiff is not trying to "ambush" defendant by submitting evidence stating a factual or legal position that varies materially from that taken by its corporate representative during the Rule 30(b)(6) deposition. See Rainey, 26 F. Supp. 2d at 95. Rather, plaintiff is seeking to cure the problem of authentication of plaintiff's exhibits. Accordingly, defendant's motion to strike is **DENIED**.

### B. Damages

The court will now address the damages element of plaintiff's prima facie case. Plaintiff seeks $299,226.75 in damages plus prejudgment and post judgment interest. As plaintiff has cured the foundation problem, the court may consider the invoices and reference value certifications submitted by plaintiff as evidence of its damages. Defendant, however, raises three objections to plaintiff's calculation of damages: (1) that the damages should be limited to replacement cost; (2) that the damages should be offset by payments and services rendered by

---

[2] In its previous order, the court found that Ms. Klamert-Porter's affidavit demonstrated that she was unfamiliar with plaintiff's invoice generation or reference value certification procedures. The court did not find, as defendant suggests, that she was unfamiliar with the deposition topics noticed by defendant, the value and cost of production of plaintiff's tires and the claims submitted by plaintiff.

defendant; and (3) that plaintiff is not entitled to prejudgment interest of eighteen percent per annum.

### 1.     **Method of Measuring Damages**

Plaintiff claims that its calculation of  $299,226.75 in liquidated damages is based on the invoice value of the stolen tires plus prepaid federal excise taxes for the four retail shipments and also on the manufacturer's cost or inventory value of the tires that were stock transfers.  To prove the value of the four retail shipments, plaintiff has submitted invoices[3] that total $66,142.81 for bill of lading number 3809-181918, $70,632.21 for bill of lading number 3809-181919, $54,932.89 for bill of lading number 3809-207877, and $97,796.37 for bill of lading number 3809-207641.  Plaintiff, however, is seeking only $21,691.94 in damages for the shipment represented by bill of lading number 3809-207877 as 153 tires from this shipment were recovered.  Plaintiff claims that this number represents the invoice value of the non-recovered tires.

To prove the value of the stock transfer shipment identified by bill of lading number 3809-207236, plaintiff submits copies of printouts from its marketing support system showing the base or list price for the particular tires that were included in the lost shipment.  Mr. Fisher attests to plaintiff's policy of valuing

---

[3] The invoice amounts include federal excise tax that was prepaid by plaintiff.

tires that were part of lost or damaged stock shipments at sixty percent of the base price. Therefore, for this particular shipment, plaintiff is claiming damages of $42,963.42, which is sixty percent of the base price.

The ordinary measure of damages under the Carmack Amendment for failure to deliver a shipment is the market value or invoice price. See The Paper Magic Group, Inc. v. J.B. Hunt Transp., Inc., 318 F.3d 458, 461 (3d Cir. 2003); see also, Hector Martinez & Co. v. S. Pac. Transp. Co., 606 F.2d 106, 110 (5th Cir. 1979). "This method, however, is not the exclusive means by which damages may be measured in Carmack Amendment cases: It is not applied when another method will more accurately reflect the loss actually suffered by the plaintiff." Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc., 414 F.3d 546, 552 (5th Cir. 2005). The carrier bears the burden of proof in demonstrating that the court should deviate from the ordinary market value rule. Robert Burton Assocs. v. Preston Trucking Co., 149 F.3d 218, 221 (3d Cir. 1998).

Defendant argues that plaintiff should be awarded the replacement cost of the tires rather than market value. Defendant argues that plaintiff lost no sales. Defendant, however, presents only circumstantial evidence that plaintiff's 2002 sales volume was very large in comparison to the number of tires that comprised the five stolen shipments. The court finds that defendant has failed

to establish that the court should deviate from the general rule of awarding market value. Furthermore, defendant has not established that other circumstances in the case at hand warrant an alternative measure of damages. Cf. Project Hope v. M/V Ibn Sina, 250 F.3d 67, 77 (2d Cir. 2001) ("no market value existed to provide a fair market value of humulin, thus warranting reliance on the replacement cost"). The court finds that plaintiff is entitled to the invoice value for the retail shipments and sixty percent of the base price for the stock transfer shipment. The court finds that the evidence supports plaintiff's claim for liquidated damages in the amount of $299,226.75.

### 2. Damages Set-Off

Defendant claims that plaintiff's damages should be reduced by $90,422.62. Defendant alleges that it has made $15,000.00 in payments to plaintiff to pay for the stolen tires and that it has rendered to plaintiff transportation services valued at $75,422.62. Defendant has not brought a counterclaim against plaintiff in this amount. As defendant is in default, the court declines to offset plaintiff's damages.

### 3. Prejudgment Interest

Plaintiff seeks prejudgment interest on its unliquidated damages. Plaintiff requests that the interest be calculated from the date of delivery and that the

court apply a rate of 1 ½ percent per month.  An award of prejudgment interest may be allowed at the court's discretion in Carmack Amendment cases.  See <u>George R. Hall, Inc. v. Superior Trucking Co.</u>, 532 F. Supp. 985, 996 (N.D. Ga. 1982).  The court believes that plaintiff is entitled to prejudgment interest.  However, the court considers the rate requested by plaintiff exorbitant.  As plaintiff has not provided the dates of delivery, interest will be calculated from the dates plaintiff filed its claims with defendant.

Plaintiff cites to O.C.G.A. § 7-4-16 in support of its requested rate.  This statute provides that 1 ½ percent per month is the maximum prejudgment interest rate that the owner of a "commercial account" may recover.  O.C.G.A. § 7-4-16.  However, in cases involving federal questions, the prejudgment interest rate is entirely within the court's discretion and is not subject to state law.  See <u>Sun Ship, Inc. v. Matson Navigation Co.</u>, 785 F.2d 59, 63 (3d Cir. 1986). The court, therefore, will look to the post judgment interest rate specified in 28 U.S.C. § 1961 for guidance.  The court finds that a prejudgment interest rate of 3.49 percent per annum is reasonable.  The court arrived at this rate by taking the average post judgment interest rates in effect for February 28, 2002, the date on which plaintiff

10

filed its first claim with defendant, and March 10, 2006, the date of this judgment.[4]  Therefore, the total pre-judgment interest award is $40,418.54.[5]

### III.    Conclusion

Based on the foregoing, defendant's motion to strike [35-1] is hereby **DENIED**.  Plaintiff's motion for summary judgment [24-1] is hereby **GRANTED**.  The court **AWARDS** plaintiff $299,226.75 in damages for the stolen shipments, prejudgment interest in the amount of $40,418.54, and post judgment interest.  The clerk is thus **DIRECTED** to enter judgment therefor, together with post judgment interest pursuant to 28 U.S.C. § 1961.

IT IS SO ORDERED, this 10th day of March, 2006.

*s/William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

---

[4] Under 28 U.S.C. § 1961, the rate of interest used in calculating the amount of post judgment interest is the weekly average one-year constant maturity (nominal) Treasury yield.  For the week ending February 22, 2002, the applicable interest rate was 2.24 percent per annum.  For the week ending March 3, 2006, the applicable interest rate was 4.74 percent per annum.

[5] The court arrived at this amount by calculating the interest for each shipment separately from the date plaintiff filed its claim with defendant for that particular shipment.  Plaintiff filed claims for the shipments under bills of lading numbers 3809-181918 and 3809-181919 on February 28, 2002, for the shipment under bills of lading numbers 3809-207236 and 3809-207877 on September 18, 2002, and for the shipment under bill of lading number 3809-207641 on October 21, 2002.